UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PETR KOZLENKKO,<br><br>Petitioner(s),<br>v.<br><br>JULIO HERNANDEZ, et al.,<br><br>Respondent(s). | CASE NO. C26-3147-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner filed a petition for a writ of habeas corpus, asserting that his re-detention by Immigration and Customs Enforcement ("ICE") violated his federal statutory, regulatory, and constitutional rights. Dkt No. 1. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 1, 4, 7. For the reasons stated below, the Court will grant Petitioner's habeas petition.

## I. BACKGROUND

Petitioner, a native and citizen of Russia, entered the United States on April 8, 2022, at the San Ysidro, California, port of entry as a 17-year-old accompanied by his parents. Dkt. No. 5 ¶¶ 3–4. Petitioner and his parents requested asylum, and after they were briefly taken into custody by United States Customs and Border Protections ("CBP"), Petitioner and his parents were served with a Notice to Appear ("NTA") and paroled into the United States on humanitarian grounds

under 8 U.S.C. § 1182(d)(5). Petitioner's parole expired on April 4, 2023.[1] Dkt. No. 6-2 at 3, Dkt. No. 6-1 at 2.

Petitioner remained in the United States after the expiration of his parole, and the Government took no action to return Petitioner to immigration custody for over three years. *See* Dkt. No. 6-2 at 3. During that time, Petitioner pursued asylum, first as a derivative child on his parents' asylum application, and later through an asylum application in his own name. Dkt. No. 6-2 at 3, Dkt. No. 1-7 at 2. On January 1, 2026, Petitioner was arrested and charged with reckless driving in Lynwood, Washington. Dkt. No. 5 § 7, Dkt. No. 1-8 at 2. The Lynwood Municipal Court then entered a stipulated order of continuance under which Petitioner's charge will be dismissed provided he abides by the order's conditions for a year. Dkt. No. 1-8 at 2, Dkt. No. 5 § 7. Petitioner has no other criminal arrests or convictions.

On July 20, 2026, Petitioner received a "Call-In Letter" from the Department of Homeland Security ("DHS") that instructed him to report to an office located in Tukwila, Washington, on August 3, 2026, "[t]o discuss [his] Immigration Case." Dkt. No. 1-5 at 2; *see* Dkt. No. 5 ¶ 7. When Petitioner reported as instructed on August 3, 2026,[2] ICE agents arrested Petitioner and served him with a Form I-200 "Warrant for Alien Arrest," citing 8 U.S.C. § 1226 as authority for the arrest (Dkt. No. 6-3 at 2), and with a Form I-286 "Notice of Custody Determination," stating that Petitioner would be detained under 8 U.S.C. § 1226, (*id.* at 3). Petitioner signed the notice and requested that an immigration judge review the custody determination. *Id.* That same day,

[1] The Government asserts that Petitioner's parole expired on April 4, *2024* (Dkt. No. 4 at 5, Dkt. No. 5 ¶ 6), but as Petitioner observes (Dkt. No. 7 at 2), the Government's own records identify April 4, *2023*, as the date of expiration (Dkt. No. 6-2 at 3, Dkt. No. 6-1 at 2), and the Government adduces nothing to show otherwise.

[2] The Form I-213 "Record of Deportable/Inadmissible Alien" submitted by the Government states that Petitioner "reported to the Seattle Field office in accordance with reporting requirement of his Order of Release on Recognizance [("OREC")], Form I-220A." Dkt. No. 6-2 at 3.

Petitioner entered the Northwest ICE Processing Center, where he remains detained. Dkt. No. 5 ¶¶ 9, 14.

Petitioner requested a bond redetermination hearing with the immigration court on August 12, 2026, but did not receive such a hearing before he withdrew his request on August 27, 2026. *Id.* ¶ 11–12. Petitioner filed the pending habeas petition on September 2, 2026. Dkt. No. 1.

## II. ANALYSIS

### A. Legal Standard

"Writs of habeas corpus may be granted by … the district courts … within their respective jurisdictions." 28 U.S.C. § 2241(a). To succeed on his petition, Petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

### B. Petitioner's Detention Was Unlawful.

Petitioner contends that the Government violated the INA and its implementing regulations when it re-detained him without a prior individualized determination and written notice. Dkt. No. 1 at 11–14. The Government argues that it was entitled to detain Petitioner without such a determination and notice because Petitioner's status reverted to that of an "arriving alien" subject to mandatory detention under Section 1225(b) when his humanitarian parole expired in April 2023. Dkt. No. 4 at 6–8.

Under Section 1225, an "applicant for admission," that is, a noncitizen "who has not been admitted or who arrives in the United States," is subject to mandatory detention. 8 U.S.C. § 1225(a)(1), (b)(1)–(b)(2); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). A noncitizen subject to mandatory detention under § 1225(b) may nevertheless be "parole[d] into the United States temporarily … on a case-by-case basis for urgent humanitarian reasons or significant public

benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *see Jennings*, 583 U.S. at 288. Such humanitarian parole is, however, "not [to] be regarded as an admission of the [noncitizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, once the Secretary of Homeland Security has determined that the purposes of parole have been achieved, the noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

DHS regulations set forth conditions under which the DHS Secretary and his delegees may grant and terminate parole. *See* 8 C.F.R. § 212.5. Those regulations specify that DHS may either "automatically" terminate parole or terminate parole "[o]n notice." *Id.* §§ 212.5(e)(1), (e)(2)(i). Parole terminates automatically and without written notice where the noncitizen departs the United States, or, "if not departed, at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1). In all other instances, parole "shall be terminated upon written notice to the [noncitizen]." *Id.* § 212.5(e)(2)(i). Termination of parole with notice occurs only "upon accomplishment of the purpose for which parole was authorized" or when an authorized DHS official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.*; *see* 8 U.S.C. § 1182(d)(5)(A) (requiring the Secretary of Homeland Security determine "the purposes of such parole … have been served" prior to returning a paroled non-citizen to custody). In other words, where it is not automatic, termination of parole requires both (1) written notice to the noncitizen, and (2) a finding by a DHS official with authority that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." *Id.*; *Arevalo-Hortua v. Hernandez*, No. 26-cv-2994, 2026 WL 2797986, at *4 (W.D. Wash. Sep. 18, 2026); *Dieng v. Hermosillo*, No. 26-cv-190, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026).

When parole is terminated, automatically or "on notice," DHS regulations provide that the noncitizen is "restored to the status that he or she had at the time of parole," and "any order of exclusion, deportation, or removal previously entered *shall* be executed." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added). However, "[i]f the exclusion, deportation, or removal order cannot be executed *within a reasonable time*, the [noncitizen] *shall* again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." *Id.* (emphasis added). Thus, "[t]aken together, the applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Colmenarez v. Hernandez*, 2026 WL 850535, at *3 (W.D. Wash. Mar. 27, 2026) (citing *Dieng*, 2026 WL 411857, at *6); *Popova v. Blanche*, No. C26-1229, 2026 WL 1242984, at *2 (W.D. Wash. May 6, 2026); *Len Nava v. Mullin*, No. 26-cv-2324, 2026 WL 2294576, at *3 (W.D. Wash. Aug. 10, 2026); *Fuenmayor Rodriguez v. Noem*, , No. 26-cv-673, 2026 WL 799363, at *3–4 (W.D. Wash. Mar. 23, 2026); *Sanchez Silva v. Warden Nw. Det. Ct.*, 2026 WL 925640, at *2–3 (W.D. Wash. Apr. 6, 2026) ("Several courts in this Circuit that have reviewed this question determined that neither a now-expired parole nor a noncitizen's status as an arriving alien is sufficient for the Government to revoke parole without complying with the relevant statutory and regulatory provisions.").

Here, the Government contends that Petitioner's August 3, 2026 arrest and detention are the automatic consequence of the expiration of Petitioner's parole three years earlier. To begin with, the Government's inconsistent records undermine this claim. Petitioner's I-213 states that Petitioner reported to ICE on August 3, 2026, under his I-220A Order of Release of Recognizance ("OREC"), and the I-286 expressly states that ICE made its custody determination under INA

§ 236, codified at 8 U.S.C. § 1226. Dkt. No. 6-2 at 3; Dkt. No. 6-3 at 3. The Government's assertion that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) is thus not reflected in the records that the Government cites.

Even accepting the Government's argument that Petitioner's parole expired under 8 U.S.C. § 1182(d)(5)(A), the Government does not contend or adduce evidence to show that it took any action other than re-paroling Petitioner. As previously discussed, the applicable regulations required the Government take one of two actions upon the asserted expiration of Petitioner's parole: (a) timely detain Petitioner for execution of "any order of exclusion, deportation, or removal previously entered" or upon a determination by an authorized DHS official that "the public interest requires that [Petitioner] be continued in custody" even though removal "cannot be executed within a reasonable time"; or (b) "release[] [Petitioner] on parole" while his immigration proceedings continue. 8 C.F.R. § 212.5(e)(1)–(e)(2)(i). The parties agree that Petitioner's initial period of parole expired multiple years[3] before ICE re-detained Petitioner in August 2026. *See* Dkt. No. 1 at 6; Dkt. No. 4 at 5, 6–8. The parties also agree that during those intervening years, the Government made no effort to return Petitioner to custody for execution of any removal order. *See id.* And the Government makes no assertion that the August 2026 re-detention of Petitioner at issue occurred within a reasonable time of the expiry of Petitioner's initial period of parole or as the result of an individualized decision by an authorized DHS official. *See* Dkt. No. 4 at 6–8. Under these circumstances, the Court can only conclude that the Government implicitly, if not explicitly, "released [Petitioner] on parole" anew, as required by 8 C.F.R. § 212.5(e)(2)(i). *See Colmenarez*, 2026 WL 850535, at *3; *Dieng*, 2026 WL 411857, at *6.

[3] As previously noted, the record reflects that Petitioner's parole ended on April 4, 2023. Dkt. No. 1 at 2, 6; Dkt. No. 7 at 2; Dkt. No. 6-2 at 3, Dkt. No. 6-1 at 2. But even if the Government was correct that it expired in 2024, it was still two years before Petitioner was re-detained.

The Government argues that even if it re-paroled Petitioner, it lawfully revoked his parole when ICE served Petitioner with a new NTA on August 3, 2026. Dkt. No. 4 at 7–8. The Court finds this argument unpersuasive for several reasons. To begin with, the record contains no evidence that an authorized official determined the purposes for which Petitioner's parole was authorized had been served or that "neither humanitarian reasons nor public benefit warrants the continued presence of [Petitioner] in the United States." 8 C.F.R. § 212.5(e)(2)(i); 8 U.S.C. § 1182(d)(5)(A); *see Sanchez Silva*, 2026 WL 925640, at *2 ("DHS's decision to revoke a noncitizen's parole under § 1182(d)(5)(A) must be made on an individualized basis and carried out only after the purposes of the parole have been served." (citing *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025))). Neither does the NTA contain any explanation of the reasons for the revocation of Petitioner's parole. *See* Dkt. No. 6-4. "[B]efore parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision." *M.R.R. v. Chestnut*, No. 25-CV-1517, 2025 WL 3265446, at*6 (E.D. Cal. Nov. 24, 2025) (citing *Bostock*, 792 F. Supp. 3d at 1142–45). And ICE served Petitioner with the NTA only *after* he had been arrested and detained. *See* Dkt. No. 6-2 at 3–4, Dkt. No. 5 ¶¶ 9–10. If, as the Government insists, Petitioner's detention was the consequence of the termination of his parole (Dkt. No. 4 at 1–2, 7–8) and service of the NTA terminated his parole (*id.* at 7–8), then the consequence (i.e., detention) occurred *before* its predicate (i.e., termination). The Court joins other courts in this circuit in rejecting the Government's assertion that it satisfied the statutory and regulatory requirements for "on notice" termination of parole through service of an NTA that "does not mention Petitioner's parole, let alone provide any basis for the revocation, and … was served on Petitioner after he was arrested and detained." *Zaika v. Field Off. Dir.*, No. C26-1196-RSM, 2026 WL 1194625, at *3 (W.D. Wash. May 1, 2026); *see also, e.g., Castillo v. Mullin*, No. 26-cv-777, 2026 WL 2057096, at *1

(D. Nev. July 16, 2026); *Romero-Medina v. LaRose*, No. 26-cv-411, 2026 WL 2138571, at *3 (S.D. Cal. July 24, 2026).

Accordingly, the Court concludes that the Government's revocation of Petitioner's parole and re-detention of Petitioner violated federal statute and regulation. When, upon the expiration of Petitioner's initial period of parole, the Government made no effort to timely act as required for "automatic" revocation by 8 C.F.R. § 212.5(e)(2)(i), it implicitly re-paroled Petitioner. Then, when the Government re-detained Petitioner in August 2026 without the individualized determination or notice required to terminate Petitioner's parole under 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e)(2)(i), the Government violated Petitioner's statutory and regulatory rights.

**C. Petitioner's Detention Violates Due Process.**

Even if the Government had followed the parole revocation regulations, Petitioner contends that his arrest and re-detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has found that civil immigration detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) (quoting *Zadvydas*, 533 U.S. at 690).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The

fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

1. <u>Petitioner has a protected interest in his liberty.</u>

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Here, where Petitioner was released on parole on April 8, 2022, and had been living freely in his community for over four years before he was detained (Dkt. No. 5 ¶¶ 4, 9), "the constitution does not countenance fictional erasure of his actual presence in this country—or his concomitant due process rights." *Dieng*, 2026 WL 411857, at *5. A "parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and, as such, the parolee's liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Thus, "termination [of parole] calls for some orderly process[.]" *Id.* "This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*." *Torres v. Hermosillo*, No. 25-CV-2687, 2026 WL 145715, at

*5 (W.D. Wash. Jan. 20, 2026) (collecting cases); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause.").

Accordingly, the first *Mathews* factor favors Petitioner.

2. <u>The risk of erroneous deprivation of liberty is high.</u>

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing is high. 424 U.S. at 335. As described earlier in this order, Petitioner was arrested and detained after he appeared for an immigration appointment. *See* Dkt. No. 1-5 at 2, Dkt No. 6 ¶ 9. Before he was arrested, the Government never lawfully terminated his parole by making the requisite individualized determination or providing sufficient notice. "[T]herefore the risk of erroneous deprivation in fact materialized in this case." *Molina Arzola v. Facility Adm'r*, No. 26-cv-00717, 2026 WL 1045508, at *6 (W.D. Wash. Apr. 17, 2026). Where, as here, the Government disregards its own procedures, the risk of erroneous deprivation of liberty is significant. Moreover, the discrepancies in the record regarding the basis for Petitioner's detention only increase the risk of error.

In sum, the Court finds that the second *Mathews* factor favors Petitioner.

3. <u>The Government's interest in detaining Petitioner without process is low.</u>

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without complying with 8 C.F.R. § 212.5. *Mathews*, 424 U.S. at 335. Although the Government has a strong interest in enforcing immigration laws generally, *Rodriguez Diaz*, 53 F.4th at 1208, that interest is not necessarily threatened if it is required to comply with federal regulations. *See O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 404–05 (E.D.N.Y. 2025)

(holding government's interests in enforcing immigration laws "is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow [its] own regulations." (citation modified)). Indeed, here, the Government articulates no reason for revoking Petitioner's parole that might support an interest in detaining him without notice.

For these reasons, the Court finds that the Government's interest in re-detaining Petitioner without first complying with 8 C.F.R. § 212.5 is minimal: any administrative or financial burdens in complying with the regulations are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. Indeed, "the additional procedural safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme." *Dieng*, 2026 WL 411857, at *8 (cleaned up); *see also Camacho-Gutierrez*, 2026 WL 195758, at *5 ("the burden of providing notice upon an individualized assessment in accordance with agency regulations cannot be so great as to warrant the eschewing of such regulations altogether.").

The Court's review of the *Mathews* factors confirms that Petitioner's re-detention does not comport with due process.

## III. REMEDY

Having determined that Petitioner's re-detention violates his statutory and regulatory rights, as well as his constitutional right to due process, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "[T]he essence of habeas corpus is an attack by

a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

The Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See, e.g.*, *Molina Arzola*, 2026 WL 1045508, at *7 (ordering release where humanitarian parole was unlawfully revoked); *Torres*, 2026 WL 145715, at *8 (same); *Camacho-Gutierrez*, 2026 WL 195758, at *5 (same). Furthermore, as explained in this order, the parole statute, its implementing regulations, and due process require that Petitioner receive notice before his parole may be revoked.

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS as follows:

1) Within ONE DAY of this order, Petitioner shall be released from custody on the same conditions of parole previously imposed before his August 2026 arrest.
2) Petitioner shall not be re-detained, absent urgent circumstances, without compliance with the pre-deprivation procedures set forth in 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 212.5(e).
3) The Government shall file a declaration no later than THREE DAYS from the date of this order, documenting Petitioner's release in compliance with this order.
4) Any fee petition shall be filed within the deadlines set forth by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 28th day of September, 2026.

Kymberly K. Evanson
United States District Judge